## 36012. HANCE v. THE STATE.

UNDERCOFLER, Chief Justice.

The appellant, William Henry Hance, was convicted by a jury in the Superior Court of Muscogee County of the murder of Gail Faison and attempted theft by extortion. He was sentenced to death for the murder and five years imprisonment for the attempted extortion. This is his appeal.

### *Summary of Facts.*

From the evidence presented at trial, the jury was authorized to find the following facts:

On or about February 28, 1978, the appellant, a soldier stationed at Fort Benning, Columbus, Georgia, went to the Sand Hill Bar located near the base for a drink. While in the bar, he was solicited by the victim, a prostitute named Gail Faison, also known as Gail Jackson or Gail Bogen. The appellant agreed to a price of $20.00 and they got into his car. He drove 200 yards up the road to an area she selected and stopped. She began to undress when the appellant for no other reason than the victim was a prostitute, became enraged. He grabbed the victim and as she tried to get away, he hit her with a karate chop across her head. She fell unconscious. The appellant then pulled her out of the car, dislocating her elbow in the process. He returned to his car for a moment, but thinking she was still alive, he got a jack handle from his car, and finding his victim to be still breathing, repeatedly struck the helpless victim in the face. The beating was so severe that the victim's entire face was destroyed and bone fragments were scattered about the area. Some of the victim's brain tissue was literally beaten from the skull. The force of the appellant's attack was so great it produced a depression in the ground behind the victim's head. The appellant then buried the victim's body in a shallow grave he dug with an entrenching tool.

During this period of time, the City of Columbus was being terrorized by a series of unsolved strangulation murders. Beginning on March 3, 1978, the appellant, in order to avert suspicion from himself, sent a total of five letters to the Chief of Police of Columbus, Georgia, and

one letter to the local newspaper. These letters were written on Army stationery and demanded that either the Columbus strangler be caught by a certain date or a female named Gail Jackson would be executed. The letters were signed "Forces of Evil," a fictitious group the appellant had created. The second of these letters received by the Chief of Police demanded either the apprehension of the Columbus strangler or a $10,000 ransom in return for the victim's safety. In addition, the appellant found an Army Cap with a different unit insignia than his unit and placed this near the crime scene, also in order to avert suspicion.

On March 15, 1978, the appellant went to Vice Mitchell's Bar. While there, Irene Thirkield asked him to give her a ride to the Sand Hill bar. While in appellant's car she solicited him. After she had removed her clothes, appellant again became enraged and attacked her in the same manner as he had attacked the first victim. He beat Irene Thirkield so severely that her entire head was missing from her body. Appellant hid her body on the military reservation behind a pile of logs.

On March 30, 1978, the appellant called the military police and told them exactly where to find Gail Faison's body. The body was recovered that afternoon.

Appellant thereafter added the name "Irene" to the letters he was sending to the police chief and stated that she, like his first victim, would die unless the terms were met. In the fourth letter received by the Columbus police, the appellant detailed the exact manner of the killing of Gail Faison, including the dislocated elbow.

Again, in a similar manner to the calls made regarding his first victim, the appellant called the military police.

The military police, acting upon information that the appellant was the last person seen with Irene Thirkield, questioned the appellant and obtained a confession as to both murders. Subsequently, the appellant also gave a confession to Columbus authorities. He told authorities where he had disposed of the murder weapons and clothes of the victims. These were subsequently recovered. Handwriting samples were obtained from the appellant and were matched with handwriting on the letters

received by the chief of police. A fingerprint from one of the letters was determined to be that of the appellant.

### Enumerations of Error.

1. Appellant contends in his first enumeration of error that the State failed to prove venue sufficiently as a matter of law.

The State presented evidence that the body of the victim was found within Muscogee County in close proximity to the Fort Benning military reservation. Agent William Wanninger testified that he pointed out the location of the body to the City Engineer of Columbus, Georgia, James D. Webb. The city engineer testified that the location shown to him was situated within the county and was not part of the Federal military reservation. No conflicting evidence was introduced. *Climer v. State,* 204 Ga. 776 (51 SE2d 802) (1949). This evidence was sufficient to establish venue in Muscogee County. *Wimbash v. State,* 70 Ga. 718 (3) (1883); *Ellard v. State,* 233 Ga. 640 (212 SE2d 816) (1975); *Aldridge v. State,* 236 Ga. 773 (225 SE2d 421) (1976).

2. In his second enumeration of error, appellant asserts that the trial court erred in failing to suppress his confessions because they were not freely and voluntarily given. Appellant urges that the criteria enumerated in the case of *Riley v. State,* 237 Ga. 124 (226 SE2d 922) (1976), should be used in determining the voluntariness of the confession. *Riley,* however, involved the confession of a juvenile. The State is under a heavier burden in showing that a juvenile understood and waived his rights. See *Massey v. State,* 243 Ga. 228 (253 SE2d 196) (1979). Therefore, the criteria set forth in that case does not apply in the case of an adult's confession.

The appellant was given a Jackson v. Denno hearing and the trial court determined that the confession was freely and voluntarily given. The trial court's determination was not clearly erroneous. Under these circumstances the determination in favor of admissibility is accepted by the appellate court. *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Burney v. State,* 244 Ga. 33 (257 SE2d 543) (1979); *McClesky v. State,* 245 Ga. 108 (263

SE2d 146) (1980). In this case the evidence shows that agents from the military criminal investigation division stationed at Fort Benning, acting through appellant's commanding officer, requested that appellant accompany them to CID headquarters for the purpose of being interviewed. Appellant readily agreed. The interview began at approximately 12:45 p.m. and lasted until 10:20 p.m. Appellant was advised of his rights under the Fifth and Sixth Amendments. He signed a waiver and was informed that the interview pertained to the murder of Irene Thirkield. Appellant made incriminating statements that afternoon in which he admitted writing the letters signed "Forces of Evil," but was compelled to do so by that "organization." The appellant was then interviewed by local authorities and the F.B.I. He was housed overnight in the Bachelor Enlisted Quarters under guard. The next morning at approximately 7:30 a.m. he was again advised of his rights and he signed a written waiver. The interview terminated at 3:00 p.m. after a written confession was obtained. The appellant was interviewed for a total time of 18 hours. During this period, however, he was fed lunch and dinner, allowed to use the restroom, smoke and eat snacks. The questioning was not continuous but was spread over a two-day period. At no time did the appellant request an attorney or ask that the interview be terminated. A local attorney who had represented the appellant in civil matters heard of his arrest and called the county jail, Columbus police headquarters and CID headquarters at Fort Benning. He testified he did not handle criminal matters, was not retained but simply wanted to advise the appellant of his rights. The attorney was not able to locate the appellant.

The agents questioning the appellant testified they did not know that an attorney was attempting to find the appellant, but when they learned this fact they immediately told the appellant, who had already confessed, and he refused to see him.

No threats nor promises were made to the appellant during the interrogation.

Under these circumstances, appellant's statement was freely and voluntarily given and the trial court did

not err in failing to exclude it.

3. In his fourth enumeration of error, appellant attacks the constitutionality of Code Ann. § 27-2534.1 (b) (7). He argues that any injury grave enough to cause death is an aggravated battery within the statute and therefore the statute is overbroad and vague in violation of the due process clause of the United States Constitution and the Constitution of the State of Georgia. However, the Supreme Court of the United States has upheld the constitutionality of the statute when attacked on these same grounds. Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976). This court has held that this Code section will not be permitted to become a "catchall" and upon sentence review will restrict affirmance to those cases which lie at the very core of the Code section. *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976). See *Patrick v. State,* 245 Ga. 417 (265 SE2d 553) (1980).

Recently the United States Supreme Court has considered this section as applied to a specific factual situation. Godfrey v. Georgia, 48 USLW 4541 (1980). In Godfrey v. Georgia, it was held that Code Ann. § 27-2534.1 (b) (7), although constitutional, was unconstitutionally applied under the specific facts of that case. In order for Code Ann. § 27-2534.1 (b) to be constitutionally applied in a given case, we hold that the evidence presented at trial must satisfy the following criteria as they apply to the specific factual situation of each case.

Code Ann. § 27-2534 (b) (7) provides in pertinent part: "The offense of murder . . . was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim."

This statutory aggravating circumstance consists of two major components, the second of which has three sub-parts, as follows: (I) The offense of murder was outrageously or wantonly vile, horrible or inhuman (II) in that it involved (A) aggravated batter to the victim, (B) torture to the victim, or (C) depravity of mind of the defendant. In determining "[w]hether . . . the evidence supports the jury's or Judge's finding of [this] statutory aggravating circumstance . . . " (Code Ann. § 27- 2537 (c)

(2)), the evidence must be sufficient to satisfy the first major component of the statutory aggravating circumstance and at least one sub-part of the second component, as hereinafter set forth. See *Fair v. State,* 245 Ga. 868 (1980), post.

The phrases "outrageously or wantonly vile, horrible or inhuman" are words of common understanding, have essentially the same meaning, and are included in the statute to distinguish ordinary murders for which the penalty of death is not appropriate, from those murders for which the death penalty may be imposed. Godfrey v. Georgia, supra.

Under the plain meaning of the statute, not only must the murder be outrageously or wantonly vile, horrible or inhuman, but in addition, the facts of the case must show either an aggravated battery to the victim, torture of the victim, or depravity of mind of the defendant as hereinafter explained.

An aggravated battery occurs when "[a] person . . . maliciously causes bodily harm to another by depriving him of a member of his body, or by rendering a member of his body useless, or by seriously disfiguring his body or a member thereof." Code Ann. § 26-1305. In order to constitute aggravated battery, the bodily harm to the victim must occur before death. Godfrey v. Georgia, supra.

Torture occurs when the victim is subjected to serious physical abuse before death. Godfrey v. Georgia, slip opinion, p. 10. Serious sexual abuse may be found to constitute serious physical abuse. *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974). Torture also occurs when the victim is subjected to an aggravated battery as hereinabove defined.

Evidence of psychological abuse by the defendant to the victim before death where it is shown to have resulted in severe mental anguish to the victim in anticipation of physical harm may amount to serious physical abuse (i.e., torture of the victim), and also will support a finding of depravity of mind of the defendant.

Insofar as aggravated battery and torture are concerned, only facts occurring prior to death may be considered. The death of a victim who dies in-

stantaneously with little or no forewarning does not involve torture or aggravated battery (Godfrey v. Georgia, 48 USLW 4541 (1980); *Mulligan v. State,* 245 Ga. 266 (264 SE2d 204) (1980)); i.e., only facts showing aggravated battery or torture (as hereinabove defined)), which are separate from the act causing instantaneous death, will support a finding of torture or aggravated battery. The instantaneous death of a victim as a result of being killed by a shotgun, although the scene of death be gruesome (no other facts appearing), does not constitute torture, aggravated battery or depravity of mind. (Godfrey v. Georgia, supra.)

Where only facts occurring prior to death are relied upon to support a finding of torture or aggravated battery, the fact that the victim was tortured or was the victim, of an aggravated battery will also support a finding of depravity of mind of the defendant; i.e., a defendant who tortures the victim or subjects the victim to an aggravated battery before killing the victim can be found to have a depraved mind.

In determining whether the evidence shows "depravity of mind," the age, and the physical characteristics of the victim may be considered. See *Thomas v. State,* 245 Ga. 688 (1980).

A defendant who mutilates or seriously disfigures the victim's body after death (cf. Code § 26-1305, supra), or who commits a sex act upon the victim's body after death may be found to have a depraved mind and such acts would be sufficient to show depravity of mind of the defendant within the meaning of the statute.

Where it cannot be determined whether the victim was subjected to an aggravated battery or torture before death, or to mutilation or disfigurement after death, because the exact time of death or the precise act causing death cannot be ascertained, the penalty of death nevertheless may be sustained on the basis of aggravated battery or serious physical abuse before death or depravity of mind demonstrated after death.

As heretofore stated, the evidence must be sufficient to satisfy the first major component of statutory aggravating circumstance seven (7) ("outrageously or wantonly vile, horrible or inhuman"), and at least one (or

more) of the three parts of the second component (aggravated battery to the victim, or torture to the victim, or depravity of mind of the defendant).[1]

Review of the actual application of the section to the evidence in the case is a matter of sentence review and will be considered in that division of this opinion.

4. The trial court in the sentencing phase instructed the jury that they were authorized to consider the death penalty if they found the following statutory aggravating circumstance beyond a reasonable doubt: "The offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved an aggravated battery to the victim." Code Ann. § 27-2534.1 (b) (7).

Appellant in his third enumeration of error argues that under Code Ann. § 27-2534.1 (b) (7), a jury is not authorized to impose a death penalty unless they find not only an "aggravated battery," but also "depravity of mind." This enumeration is without merit.

To have charged "depravity of mind" would have given the jury an additional ground in which the jury could have found the existence of the statutory aggravating circumstance and therefore would have been detrimental to the appellant. See Division 3. Appellant cannot complain of a charge which is beneficial to him.

5. Appellant's fifth enumeration of error contends that his statements made during his interrogation should have been excluded because these statements were the product of an illegal arrest without probable cause. Appellant argues that an arrest is a seizure within the meaning of the Fourth Amendment and therefore an arrest absent probable cause violates the amendment, thereby triggering the exclusionary rule. *Dunaway v. New York,* — U. S. — (99 SC 2248, 60 LE2d 824) (1979). However, appellant never challenged the legality of his arrest and raises this argument for the first time on appeal. *Fleming v. State,* 243 Ga. 120 (252 SE2d 609) (1979); *Mallory v. State,* 230 Ga. 657 (198 SE2d 677)

---

[1]Justice Harold Hill is the author of Division 3 of this opinion.

(1973); *Jackson v. State,* 229 Ga. 191 (190 SE2d 530) (1972). The legality of the arrest not being challenged below, the trial court did not err in admitting defendant's confessions.

Notwithstanding appellant's failure to object below, we find that upon careful examination of the record, probable cause for the appellant's arrest existed.

Agents of the military police were in possession of the following information prior to appellant's arrest. First, from the phone calls they knew the person who killed the victims was a young black male. Second, they knew that the perpetrator was a soldier because the calls they received showed an intimate knowledge of the military reservation and the letters were written on military stationery. Also, a military cap was found near one of the bodies. Finally, they knew that the appellant, a young, black male soldier, was the last person seen with a victim prior to her death. Such information would lead a reasonably cautious person to believe that appellant had committed the offense, thereby furnishing probable cause for his arrest. See Proper v. United States, 358 U. S. 307 (1958); Beck v. Ohio, 379 U. S. 89 (1964); *Strauss v. Stynchcombe,* 224 Ga. 859 (165 SE2d 302) (1968); *Peters v. State,* 114 Ga. App. 595 (152 SE2d 647) (1966).

6. In his sixth enumeration of error, appellant contends not only that the rule of Witherspoon v. Illinois, 391 U. S. 510 (1967), was violated with respect to four veniremen, but also that the trial court used a "double standard" when it failed to exclude a venireman for cause as being predisposed to the imposition of the death penalty. We do not agree. The transcript shows that the prospective jurors' opposition to capital punishment met the Witherspoon test as reiterated in Lockett v. Ohio, 438 U. S. 586 (1978); *Harris v. Hopper,* 243 Ga. 244 (253 SE2d 707) (1979).

One potential juror, upon voir dire examination, favored the imposition of the death penalty. However, it is clear from the transcript that this potential juror would consider both punishments authorized by law in her deliberations. She was not "irrevocably committed" to the sentence of death no matter what the facts and circumstances of the case. It therefore follows that the

court's failure to excuse the juror upon motion was not based upon a "double standard." *Patrick v. State,* supra.

7. The appellant was represented prior to trial by court-appointed counsel. Appellant moved that he be allowed to represent himself at trial, which motion was granted. However, court-appointed counsel assisted the appellant throughout the trial. Counsel examined potential jurors, cross examined witnesses and made timely objections. Prior to trial appointed counsel had filed pretrial motions. On appeal, appellant is represented by two appointed attorneys. Appellant, however, has filed in letter form a list of errors which he requests we address. While such a procedure is improper, we will nevertheless address the issues presented.

The evidence viewed in a light most favorable to the verdict would authorize a rational trier of fact to find each essential element of the crimes of murder and attempted theft by extortion beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The failure to afford the appellant a preliminary hearing is not grounds for reversal. *State v. Middlebrooks,* 236 Ga. 52 (222 SE2d 343) (1976).

The appellant complains that he was not afforded a State-appointed expert to examine the murder weapon nor given a pretrial lineup. However, these issues were not raised below and no request was made by oral or written motion. See *Fleming v. State,* supra.

The State introduced over objection evidence of the murder of the second victim to show scheme, motive, intent or design. The method used was identical in both crimes, and both crimes were a part of a continuing criminal enterprise. The evidence was properly admitted. *McClesky v. State,* supra.

The State was not required to tender an autopsy report of the second victim as the medical examiner testified as to the cause of death.

During the cross examination of appellant's character witness, the district attorney inquired about a crime occurring in Virginia in order to test the witness's knowledge of the reputation of the defendant. Neither appellant nor his counsel objected and in fact appellant argued a reference to this crime to the jury in closing. This

argument is without merit. *Moulder v. State,* 9 Ga. App. 438 (1911); *Jackson v. State,* supra; *Fleming v. State,* supra.

It is apparent from the brief filed that appellant's counsel had a transcript and the appellant cannot complain he was not furnished an additional copy. See *Mydell v. Clerk, Superior Court of Chatham County,* 241 Ga. 24 (243 SE2d 72) (1978).

Finally, appellant has called attention to the fact that a deputy clerk and not a magistrate had signed his arrest warrants. This argument is without merit. Shadwick v. City of Tampa, 407 U. S. 345 (1972); *Johnson v. State,* 111 Ga. App. 298 (141 SE2d 574) (1965).

*Sentence Review.*

As required by Ga. L. 1973, p. 159 et seq., Code Ann. § 27-2537 (c) (1-3), we have reviewed the death sentence in this case. We have considered the aggravating circumstances found by the jury, the evidence concerning the crime and the defendant pursuant to the mandate of the statute. We conclude that the sentence of death imposed in this case was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

The jury found the following aggravating circumstances: "The murder was outrageously or wantonly vile, horrible, or inhuman in that it involved an aggravated battery to the victim." Code Ann. § 27-2534.1 (b) (7).

Under the evidence of this case, the victim was struck on the head with a karate chop and fell over bleeding. She was pulled from the car with such force that her elbow was dislocated. All of these injuries occurred prior to death. The victim, again while still alive, was beaten with a tire jack with such force and savagery that when found her face from the top of the eyes down was completely missing, and parts of her jaw and skull were found within a nine foot radius of the body. The cause of death was *multiple* compound fractures of the skull and face, and evulsion (removal) of the victim's brain. Although it is unknown at what exact time during the beating the victim died, the jury was authorized to find from the evidence, an aggravated battery prior to death in that the victim's

elbow and face were at a minimum rendered useless. Code Ann. § 26-1305. See *Baker v. State,* 245 Ga. 657 (1980).

The murder was outrageously or wantonly vile, horrible or inhuman in that this murder is distinguishable from ordinary murders in which the death penalty is not appropriate. The victim was not killed instantaneously, she was not a member of the appellant's family, nor was she subjecting him to any emotional trauma. She gave the appellant no reason whatsoever to assault her, and was in no manner threatening. The appellant showed no remorse for the killings and attempted in every manner to hide his crime. Under the evidence of this case, it cannot be argued that the nature of the injuries to the victim was not of the type universally condemned as outrageously or wantonly vile or inhuman. See *Patrick v. State,* supra.

Under the evidence of this case, the aggravated battery was of such a nature as to go to the very core of Code Ann. § 27-2534.1 (b) (7), and the section is constitutionally applied under the evidence in this case. Godfrey v. Georgia, supra, Division three.

We find that the evidence factually substantiates and supports the finding of this aggravating circumstance and the sentence of death by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We have thoroughly reviewed the instruction of the trial court during the sentencing phase of the trial and find that the charge was not subject to the defects dealt with in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1978), and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1978). In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find that the following similar cases listed in the appendix support affirmance of the death penalty. Appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

ARGUED MARCH 11, 1980 — DECIDED JUNE 24, 1980.

*Richard O. Smith, William Alexander Byars,* for appellant.

*William J. Smith, District Attorney, Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Jackson v. State,* 229 Ga. 191 (190 SE2d 530) (1972); *Owens v. State,* 233 Ga. 869 (214 SE2d 173) (1975); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978); *Patrick v. State,* 245 Ga. 417 (265 SE2d 553) (1980).