## 36970. BLANKENSHIP v. THE STATE.

CLARKE, Justice.

The defendant was indicted for the offenses of aggravated sodomy, burglary, murder and rape. He was found guilty of burglary, murder and rape, and sentenced to death for murder and two 20-year sentences for burglary and rape to run consecutive to the death sentence, but concurrent to each other. The case is here on direct appeal and mandatory sentence review.

### Enumerations of Error

1. In his first four enumerations of error, the defendant contends that the evidence was insufficient to sustain the verdict and the sentence. From the evidence presented at trial, the jury was authorized to find the following factual situation: In the early morning hours of March 2, 1978, the defendant left a bar at which he had been drinking and began to walk home. As he walked past the victim's upstairs apartment, he decided that he wanted to break in. The victim was a seventy-eight year old female for whom defendant had done repair work. The defendant climbed up a railing to a porch of the victim's apartment where he kicked out the lower pane of a window. After waiting and watching briefly, defendant entered the apartment. The victim, who suffered from a respiratory illness, was sitting in a chair because she had trouble breathing when she slept. The defendant came up behind the victim and grabbed her by placing his hand over her mouth and nose to keep her from screaming. She struggled and fell from the chair; he fell on top of her. The victim became unconscious, and the defendant picked her up and took her back to the bed. She was dressed in pajamas, and he pulled her pajama bottoms down and raped the victim. He then dressed and left the victim's apartment the same way that he entered it. Neighbors concerned about the victim due to her poor health eventually discovered her body. The victim had been severely beaten, scratched and bitten. She had been forceably raped, and a plastic bottle was found inserted in her vagina. She had suffered severe trauma to her oral cavity although forensic evidence could not establish oral sodomy.

Footprints left by an unusually patterned sole were found at the scene and led toward the defendant's house. The defendant's fingerprints were found at the scene, and shoes identical to the type which made the prints were recovered from the defendant's possession. The defendant made a confession; however, he denied that he beat the victim severely and at trial he recanted part of his confession and stated that he was unable to consummate the rape.

Forensic evidence established that the victim died from heart failure brought on by the trauma. Scrapings taken from the fingernails of the victim established that her attacker had international type "O" blood, the same type blood that the defendant possessed. However, scrapings taken from the left hand of the victim showed both international group "O" blood and an unexplained presence of a minute amount of "B" antigen which would have been present in individuals of an international group "B" type blood.

A very small segment of Negroid hair was found from combings of the victim's pubic hair. However, the state introduced testimony that the black attendant at the autopsy had handled the body, and the jury was authorized to find that the small segment of Negroid hair had come from that source.

We have reviewed the record in this case and find the evidence supports the verdict of the jury beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The defendant's fifth enumeration of error argues that the trial court erred in not instructing the jury that if defendant was found guilty of felony murder, he could not be convicted of the underlying felony.

In the present case the defendant was found guilty of felony murder and therefore the underlying felony is a lesser included offense. *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979); *Atkins v. Hopper,* 234 Ga. 330 (216 SE2d 89) (1975). While the court erred in failing to charge that defendant could not be convicted of felony murder and also the underlying felony, the remedy is not a new trial, but a reversal of the conviction of the underlying felony. *Collier v. State,* supra; *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1977). To determine which felony formed the basis of the felony murder where more than one felony is charged in addition to the murder, one must look to the indictment, or if it is not specified as it is not in this case, then to the evidence. *Collier v. State,* supra. Following that rationale, in the instant case the evidence shows that the burglary was the initial felony which began the chain of circumstances which ultimately led to the death of the victim. Therefore, this offense merged with the felony murder conviction. The conviction for burglary alleged in Indictment No. 28455 is reversed, and the sentence as to that offense is vacated. *Collier v. State,* supra; *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980).

3. In enumeration of error 6, defendant contends the trial court erred in charging on voluntary intoxication.

The trial court charged: "The fact that one accused of a crime was under the influence of alcohol or drugs at the time of the alleged

crime may be shown as illustrative of his motive in the transaction but one voluntarily under the influence of alcohol or drugs is presumed to intend the legitimate consequences of his act and the question is whether he intended to do the act or whether he intended the consequences of the act. If a person under the influence of alcohol or drugs is sufficiently intelligent to know or understand and intend to do a certain act and to understand that certain consequences are likely to result from it and does the act, he is criminally liable for the consequences of his act.

"However, if because of the influence of alcohol or drugs one's mind becomes so impaired as to render him incapable of forming an intent to do the act charged, or to understand that a certain consequence would likely result from it, he would not be criminally responsible for the act.

"Whether or not that is true is a question for you, the jury, to determine."

The defendant argues that the first sentence of the trial court's charge violates the rule of Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). Sandstrom held that the charge, "[T]he law presumes that a person intends the ordinary consequences of his voluntary acts," was unconstitutional for two reasons: (1) the jury may have interpreted that presumption as conclusive; and (2) the jury may have interpreted that presumption as shifting the burden of persuasion to the defendant on the element of intent. The Supreme Court of the United States held that either interpretation would violate the Fourteenth Amendment requirement that the state prove every element of a crime beyond a reasonable doubt.

Pretermitting that the defendant was found guilty of felony murder, Bridges v. State, 246 Ga. 323 (271 SE2d 471) (1980), and that the charge was more favorable to the defendant than required, Code Ann. § 26-704; McLaughlin v. State, 236 Ga. 577 (224 SE2d 577) (1976), we find no Sandstrom violation in the first sentence of the jury's instructions under attack. The trial judge charged the jury on the burden of proof, presumption of innocence, reasonable doubt, direct and circumstantial evidence, and that the burden is not upon the defendant to establish his innocence but that the burden is upon the state to prove his guilt. A jury instruction should not be considered in isolation, but the charge must be examined as a whole. Moses v. State, 245 Ga. 180 (263 SE2d 916) (1980), and cites. This charge is not similar to that charge considered in Sandstrom v. Montana, supra, but merely illustrates that the defendant has the burden, once criminal intent has been shown, of illustrating that his voluntary intoxication rose to a level required to negate intent. By its very terms, it is not a mandatory presumption and it is readily

apparent that no reasonable jury would have viewed the instructions as mandatory or conclusive, nor would they have understood them as shifting the burden of persuasion to the accused as to a necessary element of the crime. See *Patrick v. State,* 245 Ga. 417 (265 SE2d 553) (1980). Affirmative defenses such as this one are permissible. Patterson v. New York, 432 U. S. 197 (97 SC 2319, 53 LE2d 281) (1977); *Moses v. State,* supra (insanity); *Franklin v. State,* 245 Ga. 141 (263 SE2d 666) (1980) (accident); Hinkle v. Iowa, 290 NW2d 28 (1980) (voluntary intoxication). See also, *Simmons v. State,* 246 Ga. 390 (271 SE2d 468) (1980); *Lackey v. State,* 246 Ga. 331 (271 SE2d 478) (1980); *Skrine v. State,* 244 Ga. 520 (260 SE2d 900) (1979).

4. In enumerations of error 8 and 9, the defendant contends the trial court erred in excluding three jurors as being conscientiously opposed to capital punishment. All three were asked if their feelings towards capital punishment are such they would never vote to impose the death penalty, regardless of what the facts in the case might be. Two jurors were unequivocal in their negative answer and the trial court did not err in excusing them. The answers of the third juror demand closer scrutiny. The colloquy between the court and the juror was as follows:

"Clerk: Are any of you conscientiously opposed to capital punishment? [Note] [One juror raised his hand.] The Court: All you jurors have a seat. You remain standing there, please. What — Juror: Lamar Halstead. It might be listed as John Halstead. The Court: You are conscientiously opposed to capital punishment? Mr. Halstead: Not — not opposed to capital punishment but — but for myself, yes. I don't believe I could sentence someone to capital punishment. The Court: Well, let me ask you this. Are your feelings towards the imposition of capital punishment such that you would never vote to impose the death penalty, regardless of what the facts in the case might be? Mr. Halstead: Well, right now it is a personal thing to where I don't believe I could impose that. The Court: All right. Step out. Mr. Halstead: Thank you."

The question here is whether this juror should have been excused in light of the holding in Witherspoon v. Illinois, 391 U. S. 510, 516 (88 SC 1770, 20 LE2d 776) (1968). In Witherspoon, the United States Supreme Court said, "Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." We must determine whether there is any ambiguity in the answers given by Mr. Halstead. Among other things he said he was not opposed to capital punishment and followed this by saying he did not *believe* he could sentence someone to capital punishment himself. His last

statement was, "Well, right now it is a personal thing to where I don't believe I could impose that." Each of these statements is fraught with ambiguity. In his initial comment, he expressed no opposition to capital punishment. This was followed by a qualification that he did not believe that he could personally impose it. The absence of disagreement with the principle of capital punishment coupled with a doubt of his own willingness to impose the penalty is an ambiguity. His final statement is also ambiguous in at least three respects. He uses the phrase "right now" which seems to be an equivocation as to the time at which he might be able to impose the penalty. At the time this answer was given he, of course, had not heard any of the evidence in the case. He said it was a personal thing and this statement leaves a doubt as to whether he might be able to overcome his personal feelings in order to comply with the mandates of the law. He did not say he *could* not impose capital punishment. He simply said he did not *believe* he could impose the penalty. This is equivocal to the point of being ambiguous. "The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the *voir dire* testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out. . . ." Witherspoon, supra at 522, n. 21.

We find that the court erred in excusing Mr. Halstead as a prospective juror. We therefore reverse the sentence of death and remand the sentencing phase of the case for retrial.

5. In enumeration of error 10, the defendant contends the state cannot impose the death penalty in this case because, although the state had notified the defendant of its intention to seek the death penalty, the indictment did not allege the aggravating circumstances as defined in Code Ann., § 27-2534.1 (b), which the state would rely on in seeking the death penalty.

The same issue was dealt with by this court in *Bowden v. Zant,* 244 Ga. 260 (260 SE2d 465) (1979), and found to be without merit.

6. In enumeration of error 11, the defendant contends the trial court erred in overruling his motion to appoint as an expert witness a certain psychiatrist who specialized in the type of behavior exhibited by the defendant. The trial court previously ordered that the defendant be examined by the Georgia Regional Hospital. The Forensic Service Program at the Regional Hospital, after consultation, found the defendant to be responsible for his actions at the time of the alleged offense and also found him competent to stand

trial. It has been held that the trial court is under no constitutional or statutory duty to appoint a state paid psychiatrist to evaluate a defendant even though a special plea of insanity has been filed. There was therefore no abuse of discretion in denying defendant's motion for an additional psychiatrist here. *Corn v. State,* 240 Ga. 130 (3) (240 SE2d 694) (1977); *Leggett v. State,* 244 Ga. 226 (1) (259 SE2d 476) *Dampier v. State,* supra.

Note should be taken of the fact that defendant requested and was granted funds to hire a pathologist for independent examination of medical testimony, and that he was also granted funds to hire an independent investigator.

The denial of defendant's motion did not violate the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution nor the due process and equal protection clause of the Georgia Constitution.

7. In enumeration of error 12, the defendant contends the trial court erred in allowing Detective James to remain in the courtroom after the rule of sequestration had been invoked. Detective James was the chief investigating officer. At the conclusion of defendant's opening statement to the jury, the prosecutor asked that Detective James be allowed to remain in the courtroom although by the nature of his testimony, he would have to be used at different intervals throughout the trial in order to keep the continuity of the state's case. The prosecutor went on to say that they needed the detective two or three times during the trial. The court queried the prosecutor, "Do you need him?" The prosecutor replied, "We need him and request him." The defense counsel objected.

It is well established that a district attorney may have the chief prosecuting officer or investigating officer sit with him at the state's table to assist him during the trial. This is within the sound discretion of the trial court, even though the officer may testify after other witnesses have already testified. *Jarrell v. State,* 234 Ga. 410 (6) (216 SE2d 258) (1975); *Smith v. State,* 245 Ga. 168 (8) (263 SE2d 910) (1980). We find no merit in this enumeration of error.

8. In enumeration of error 13, the defendant contends the trial court erred in allowing photographs of the victim to be introduced in evidence.

"We have considered similar questions in a large number of cases and unless there are some very exceptional circumstances the photographs of the deceased are generally admissible to show the nature and extent of the wounds, the location of the body, the crime scene, the identity of the victim and other material issues. See *Godfrey v. State,* 243 Ga. 302, 304 (253 SE2d 710) (1979); *Stevens v. State,* 242 Ga. 34, 38 (247 SE2d 838) (1978), and *Lamb v. State,* 241

Ga. 10, 13 (243 SE2d 59) (1978). Doubtless, photographs of the victim are prejudicial to the accused, but so is most of the state's pertinent testimony. The pictures may be gory, but murder is usually a gory undertaking. *Moses v. State,* 245 Ga. 180 (6), supra. We find no merit in this enumeration of error.

The convictions for murder and rape are, therefore, affirmed, and the conviction for burglary is reversed. The death penalty is reversed and remanded for retrial on the issue of sentencing.

*Judgment affirmed in part; reversed in part, and remanded. All the Justices concur, except Jordan, C. J., Undercofler and Marshall, JJ., who dissent to Division 4 and reversal of the death penalty.*

DECIDED MAY 6, 1981 —
REHEARING DENIED MAY 19, 1981.

*Hendrix & Shea, John W. Hendrix, Penny J. Haas,* for appellant.

*Andrew J. Ryan, III, District Attorney, Robert M. Hitch III, Assistant District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.

ADDENDUM.

CLARKE, Justice.

On motion for reconsideration, the state urges that a Witherspoon error is harmless and not reversible when the state fails to exhaust its peremptory strikes as was the case here. We reject this argument and deny the motion for reconsideration. In so doing, we recognize that this court has previously indicated the establishment of a rule contrary to the one established here. See *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978) and *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979). However, we have reexamined Davis v. Georgia, 429 U. S. 122 (97 SC 399, 50 LE2d 339) (1976), in light of Burns v. Estelle, 592 F2d 1297 (5th Cir. 1979), affd. en banc Burns v. Estelle, 626 F2d 396 (1980). Having done so, we now hold that in cases where the death penalty is imposed, the improper exclusion from the initial panel of an otherwise qualified juror in violation of Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), is harmful error regardless of whether the state utilized all of its peremptory strikes.

GREGORY, Justice, concurring specially in addendum.

I concur in the majority opinion on motion for reconsideration because I do not believe the mechanics of jury selection in death penalty cases will permit the harmless error rule announced in *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978).

The mechanics of the selection procedure require that 42 jurors be impaneled. Code Ann. § 59-801. The defendant is allowed 20 peremptory challenges and the state 10. Code Ann. § 59-805. Beginning with the first juror impaneled, each juror is put first upon the state for consideration as to use of a peremptory challenge, and then upon the defendant, Code Ann. § 59-808. This process is most complex and a highly variable sequence of events may ensue. The use or non-use of a challenge by one party or the other sets up an entirely new group of possibilities with regard to the remaining jurors impaneled.

To illustrate, suppose the court permits a juror to be impaneled who, on voir dire, has given answers disqualifying him or her under Witherspoon. Assume that juror is number 36 and that another juror who is even more objectionable to the state is impaneled as number 39. Suppose as juror number 36 is placed upon the state in the selection process, a total of 10 jurors have been selected, and the state has 1 challenge remaining while the defendant has 4. What does the state do? If the state peremptorily challenges number 36 it will have no way to eliminate number 39. So, the state does not challenge number 36. Neither does the defendant. Then suppose neither party challenges juror number 37. The panel of 12 is complete. The state has remaining one unused challenge.

It just does not follow that it is harmless error to wrongfully excuse a juror as being disqualified under Witherspoon simply because the state does not use all its peremptory challenges and therefore could have been expected to use a challenge to eliminate the juror even if impaneled. There are too many variables which may give rise to the non-use of a peremptory challenge.