Charles Joseph **LOBOSCO**, Petitioner–Appellant,

v.

A.C. **THOMAS**, Warden, Respondent–Appellee.

No. 89–8857.

United States Court of Appeals, Eleventh Circuit.

April 16, 1991.

---

Steven Kaminshine, Georgia State University, College of Law, Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Atlanta, Ga., for respondent-appellee.

Before TJOFLAT, Chief Judge, CLARK, Circuit Judge, and KAUFMAN *, Senior District Judge.

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

CLARK, Circuit Judge:

## I. BACKGROUND

Appellant Charles LoBosco, a native of Germany, had been in the United States for only a few weeks when he and an acquaintance, John Frasier, traveled to Underground Atlanta to purchase drugs. They met Anthony Willie Gray, who sold them an amount of the drug "THC" and joined them in their vehicle. Gray passed out from alcohol in the back seat; LoBosco and Frasier felt they had been sold bad drugs and drove to an isolated, wooded area. LoBosco and Frasier then assaulted Gray. According to LoBosco's confession, LoBosco stabbed Gray while Frasier held him. At some point, either before the murder or afterwards, LoBosco removed ten dollars from Gray's pocket.

After the murder, LoBosco and Frasier went to the residence of Frasier's girlfriend, Harriet Moore. LoBosco stated, "I killed him with [Frasier's] knife." The following day, LoBosco and Frasier went out to bury the body; they were observed; and then they decided to burn the body. Linda Thomas testified that she saw LoBosco near the area where the body was discovered around the time that the body was burned.

LoBosco was eventually arrested and gave a confession. His statement indicated that he committed the murder and robbed Gray. LoBosco was then eighteen years old.

At trial, Kermish—LoBosco's counsel—decided, after consulting with LoBosco and his father, to convince the jury that LoBosco wanted to "come clean" and admit his guilt to encourage the jury to grant mercy. Therefore, Kermish did not challenge the admission of LoBosco's confession and did not pursue the theory that LoBosco was too high on drugs to have known what he was doing.

LoBosco received two life sentences, one for the murder of Gray, the other for the armed robbery. LoBosco did not appeal his sentence to the Georgia courts. His subsequent petition for state habeas relief was denied. The district court also denied all relief.

## II. DISCUSSION

### A. Ineffective Assistance and the Contrition Defense

LoBosco argues that the prosecution's case was not subjected to "meaningful adversarial testing"[1] because counsel Kermish used the guilt/innocence phase of his trial to establish LoBosco's contrition, as opposed to his innocence. Kermish deposed that he did not want to make the jury "mad" by having "stonewalled" them on the issue of guilt. LoBosco argues that Kermish carried this strategy too far by conceding his guilt to the jury and by failing to challenge the state's evidence. We hold that LoBosco has not shown that counsel Kermish was ineffective.

### 1. Counsel's Concession of Guilt

■ LoBosco maintains that Kermish conceded his guilt during the closing argument to the jury. The attorneys' closing statements were not recorded, in contravention of Georgia law.[2] LoBosco cites *Francis v. Spraggins*[3] for the proposition that, where counsel concedes guilt, a new trial is due. In *Spraggins*, the defendant entered a plea of not guilty. Counsel then admitted the defendant's guilt during the guilt/innocence phase of the trial. This court held,

> Where a capital defendant, by his testimony as well as his plea, seeks a verdict of not guilty, counsel, though faced with strong evidence against his client, may not concede the issue of guilt merely to avoid a somewhat hypocritical presentation during the sentencing phase and

---

1. *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984).

2. *See Stephens v. Hopper,* 241 Ga. 596, 247 S.E.2d 92, 95 (1978).

3. 720 F.2d 1190 (11th Cir.1983), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985).

thereby maintain his credibility before the jury.[4]

The district court found *Spraggins* distinguishable because there was no concrete evidence that in LoBosco's case the defense conceded guilt during closing argument. We agree with the district court's conclusion but not its rationale. The reason that LoBosco cannot point to any evidence that Kermish conceded LoBosco's guilt during closing argument is that the trial transcript reviewed by the district court did not record the attorneys' closing arguments. The district court refused to hold an evidentiary hearing on the matter. We therefore do not know whether there was a direct concession of guilt.

However, our prior cases make our lack of knowledge irrelevant. In *Spraggins,* there was no evidence that the defendant consented to the strategy.[5] The defendant in fact took the stand to declare his innocence during the guilt phase of his trial. Here, Kermish felt that no reasonable defense was available, and he spoke extensively with LoBosco and his father prior to initiating the strategy of convincing the jury that LoBosco was being cooperative with the state's case. Kermish deposed as follows:

Q What defense did you determine was available to Mr. Lobosco?

A From a pure defense standpoint I didn't have one. In my opinion his best defense was to, as I say, start immediately working on the sympathy of the jury and convincing them of his remorse and trying to get out of there without going to the electric chair.

Q And did Mr. Lobosco in effect settle on that approach?

A Yes, sir, we did. And in fact his father agreed with it. And I was under the impression that Lobosco—Charlie Lobosco and his father had also discussed it at times, even when I wasn't present and had agreed that that was the best.

Therefore, even if he did directly concede guilt during the closing argument, Kermish had his client's consent to enter what amounted to a guilty plea. We also note that LoBosco had already confessed his guilt to the police.[6] Buttressing (but not necessary to) our conclusion is the fact that LoBosco took the stand during the sentencing phase and openly admitted that he stabbed Gray. This is not a case where the client did not comprehend or agree with the attorney's strategy. It would have been better practice for Kermish to have placed LoBosco's consent to the strategy on the record, outside of the presence of the jury.[7] However, the evidence before us amply indicates that LoBosco was fully informed of, consented to, and assisted in the contrition tactic.

### 2. *Other Ineffectiveness Claims*

According to LoBosco, Kermish's ineffectiveness is also demonstrated by his failure to do three things during trial: Kermish did not challenge the introduction of a questionable confession; he ignored evidence that LoBosco may not have had the requisite intent to have committed malice murder; and he neglected to contest the fact that there was no independent evidence to support the armed robbery conviction.

■ As to the confession, LoBosco argues that there was ample evidence to show that the confession was untrustworthy—he was recently arrived from Ger-

---

4. *Id.* at 1194.

5. *See also Young v. Zant,* 677 F.2d 792, 799–800 (11th Cir.1982) (finding ineffective assistance of counsel where, among other things, attorney conceded guilt).

6. *See Magill v. Dugger,* 824 F.2d 879, 888 (11th Cir.1987) ("[*Spraggins*] is different from this case because the defendant in [*Spraggins*] maintained that he was not involved in the homicide. Magill confessed that he had killed Ms. Young,

so it is more understandable for his attorney to concede that Magill killed his victim.").

7. *See Wiley v. Sowders,* 647 F.2d 642, 650 (6th Cir.) ("In those rare cases where counsel advises his client that the latter's guilt should be admitted, the client's knowing consent to such trial strategy must appear outside the presence of the jury on the trial record in the manner consistent with *Boykin* [*v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ].") , *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981).

many and did not understand the American legal system; the confession itself was written in perfect English, which he was incapable of speaking; he initially refused to confess; and he was only 18 at the time he gave the statement.

However, Kermish did not request a suppression hearing pursuant to *Jackson v. Denno*[8] because of his strategy—consented to by LoBosco—that was designed to show that LoBosco had "come clean." The magistrate found that appellant understood English perfectly well at the time of trial (he had been detained for several months) and could have understood counsel's statement that the *Jackson v. Denno* hearing was being waived. The magistrate found that LoBosco could understand English at the time he made the statement. Kermish stated in his deposition that he did not have trouble communicating with LoBosco in preparation for the trial. The detective who took the confession testified that, although LoBosco did not want to give a statement initially, he decided he wanted to confess after talking to Frasier, his accomplice. Thus, regardless of the fact that the statement was not challenged as part of Kermish's trial strategy, we are untroubled by the admission of the confession.

■ LoBosco argues that Kermish should have presented the affirmative defense of voluntary intoxication. Although evidence as to LoBosco's drug-induced impairment was brought out during the penalty phase of the trial, nothing was presented to the jury during the guilt/innocence phase. LoBosco argues that, to be guilty of malice murder in Georgia, the state must show that he was guilty beyond a reasonable doubt of possessing the requisite malice. Yet Kermish never contested this point, despite the fact that Georgia juries may be instructed as to whether evidence of intoxication negated intent to commit murder.[9] LoBosco asserts that,

where a defense of insanity due to intoxication was the primary, if not the sole, defense available to him, his counsel was ineffective for failing to pursue such a defense.[10]

Although affirmative defenses such as that of voluntary intoxication are permissible in Georgia,[11] LoBosco assented to a trial strategy that precluded such an attempt to escape responsibility for the crime. We also note that LoBosco was driving a car just prior to the murder and had complained that the drugs he had been sold were ineffective. Both of these facts indicate that LoBosco would have had a difficult time showing that his voluntary intoxication rose to a level sufficient to negate intent.

■ Finally, LoBosco argues that his counsel should have challenged the sufficiency of the evidence underlying his armed robbery conviction. He argues that the only evidence presented to prove the robbery was his own statement, which is legally insufficient to support the conviction. As discussed below in section II.D., we agree that counsel erred by not challenging the sufficiency of the armed robbery charge. This error alone, however, is not sufficient to show that Kermish was generally ineffective.

### 3. *Conclusion*

LoBosco consented to his attorney's strategy during the guilt phase of the trial. This strategy was designed to impress upon the jury LoBosco's cooperativeness and remorse over the murder. The concession of guilt (if it happened), the failure to contest the confession, and the failure to pursue an intoxication defense were all aspects of this strategy. Moreover, the confession was admissible, and the intoxication defense was not strongly supported by the

---

**8.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**9.** *See Blankenship v. State,* 247 Ga. 590, 277 S.E.2d 505, 508 (1981).

**10.** *See Mauldin v. Wainwright,* 723 F.2d 799, 800 (11th Cir.1984) ("[W]here the sole theory of de-

fense is one of insanity due to alcoholism, ... minimally effective representation must include an investigation into the defendant's past and present medical condition." (citation omitted)).

**11.** *See Blankenship,* 277 S.E.2d at 508.

circumstances of the crime. Except for the armed robbery issue, LoBosco has not shown that his attorney's assistance was subpar.

We also note that LoBosco has not shown sufficient prejudice to warrant relief on ineffective assistance of counsel grounds. The state introduced highly incriminating evidence, including LoBosco's confession and the testimony of an acquaintance who heard LoBosco admit to the murder. Counsel's errors, if any, were extremely unlikely to have affected the jury's verdict on the question of guilt or innocence.[12]

### B. *Admission of the Confession*

■ As a claim separate from that included in his ineffective assistance of counsel claim, LoBosco argues that his due process rights under *Miranda v. Arizona*[13] were violated by the admission of his confession. For the reasons discussed above, we refuse to grant relief on this issue.

■ We also agree with the magistrate's conclusion that, on the facts of this case, no evidentiary hearing was warranted.[14] The district court had access to the transcripts of the trial, the state habeas hearing, and Kermish's deposition in determining that no further evidence needed to be taken.

### C. *Denial of Right to Appeal*

■ LoBosco argues that neither Kermish nor the trial court advised him of his right to counsel on appeal; because of this omission, he failed to appeal his conviction.[15] However, the magistrate found that Kermish

testified that no appeal was filed because petitioner and petitioner's father were pleased with the results of the trial when petitioner was not sentenced to death. In [his] opinion, there were no appealable issues.... Mr. K[e]rmish stated that had petitioner or his father requested an appeal, Mr. K[e]rmish would have informed the court so that the court could either appoint Mr. K[e]rmish for the appeal or find another attorney to represent petitioner. [He] also stated that petitioner was aware that he could appeal the conviction and voluntarily decided not to appeal.

Although LoBosco argues that the magistrate erred and that Kermish testified that he did not advise him of his right to appeal, Kermish deposed that "[c]ertainly [LoBosco] and I had discussed, as well as myself and the father, that he could appeal."

The Georgia case cited by appellant in support of his argument that the court must always inform a convict of his right to appellate counsel is not on point, in that it holds that, *once* a convict has requested to appeal, he must be informed of the right to counsel.[16] Because Kermish's deposition shows that the matter of an appeal was discussed with LoBosco and his father and that they decided against it, no relief is appropriate on this claim.

### D. *Armed Robbery Conviction*

■ LoBosco argues that the only evidence to support the armed robbery conviction was one sentence in his two-page confession: "While we had [Gray] in the car I

---

12. *See Clozza v. Murray,* 913 F.2d 1092, 1101 (4th Cir.1990) ("In light of the abundant evidence to support the verdict and inconsistent evidence to support the defenses available, we cannot conclude that the result of these proceedings would have been different had counsel not made the questioned remarks."); *Magill,* 824 F.2d at 888 (finding deficient performance of counsel during guilt phase where counsel failed to explain defense theory but refusing to find prejudice due to overwhelming evidence of guilt). *See generally Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) (establishing standard for prejudice).

13. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

14. *See generally Birt v. Montgomery,* 725 F.2d 587, 591 (11th Cir.) (en banc) (burden on petitioner to show need for evidentiary hearing), *cert. denied,* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984).

15. *See Cochran v. State,* 253 Ga. 10, 315 S.E.2d 653 (1984) (trial record must reflect fact that defendant was advised of right to counsel on appeal).

16. *Id.,* 315 S.E.2d at 654.

reached in his pocket and got $10 out." The statement suggests that the victim had passed out from intoxication by the time LoBosco reached for the ten dollars. The state in its brief concedes that LoBosco's statement was unclear "as to whether [the taking] occurred prior to the beating or after the beating."

We hold that the evidence was insufficient to support LoBosco's conviction on armed robbery charges. Under Georgia law, to establish armed robbery requires a showing that the defendant took property by force and that the force was exerted prior to or contemporaneous with the taking.[17] Because the evidence does not establish that the taking occurred after the assault, there was no armed robbery. Appellant was therefore factually innocent of the charges.[18] Also, the remark was uncorroborated and cannot serve as the sole evidence for conviction.[19]

### III.  CONCLUSION

The district court's determinations regarding LoBosco's claims on the issues of ineffective assistance of counsel, improper admission of his confession, and denial of the right to appeal are AFFIRMED. On the issue of the sufficiency of the evidence to support LoBosco's armed robbery conviction, the district court is REVERSED and the case is REMANDED for the district court to grant the writ of habeas corpus with respect to the conviction for armed robbery.

17. O.C.G.A. § 16–8–41(a); *see Hicks v. State,* 232 Ga. 393, 207 S.E.2d 30, 37 (1974) ("[Georgia law] clearly contemplates that the offensive weapon be used as a concomitant to a taking which involves the use of actual force or intimidation (constructive force) against another person."); *see also Clark v. State,* 189 Ga.App. 68, 374 S.E.2d 783, 785 (1988).

18. *See generally Jackson v. Virginia,* 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560

(1979) (evidence insufficient where "no rational trier of fact could find guilt beyond a reasonable doubt").

19. *See* O.C.G.A. § 24–3–53 ("A confession alone, uncorroborated by any other evidence, shall not justify a conviction."); *see also Smith v. United States,* 348 U.S. 147, 152, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954) ("an accused may not be convicted on his own uncorroborated confession").