**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 13 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KENNETH CHAD CHARM,

      Petitioner-Appellant,

v.

MIKE MULLIN, Warden,
Oklahoma State Penitentiary,

      Respondent-Appellee.

No. 01-6003
(D.C. No. CIV-98-256-A)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , Chief Judge, **BALDOCK** , and **EBEL** , Circuit Judges.

---

Kenneth Charm appeals the district court's decision denying him habeas relief, *see* 28 U.S.C. § 2254, from his Oklahoma first-degree murder conviction and death sentence. Among other issues, Charm challenges his trial attorney's conceding Charm's guilt during first-stage opening argument. Because defense counsel was not constitutionally ineffective in doing so, we affirm the district court's denying Charm relief on this, and his remaining claims for habeas relief.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. FACTS

Fourteen-year-old Brandy Hill had traveled to Lawton, Oklahoma, to spend several weeks with her father during her summer vacation. On July 20, 1993, Charm and his sixteen-year-old cousin, Ronald Jessie, visited Michael Hill, the girl's father. Charm and Hill were described as drinking buddies.

As Charm and Jessie drove away from the Hill residence that afternoon, they spied Brandy walking down the street. The two men lured her into their car. Jessie then wrapped a piece of cloth around Brandy Hill's neck. The men drove the victim to a field. There, both Charm and Jessie each twice raped the girl. Afterwards, Jessie tried to choke her to death with the piece of cloth. He could not kill her, however. Charm then tried, still without success. Finally, Jessie retrieved a sledgehammer from the car's trunk and hit the girl twice in the head. Charm then hit her several more times. The two men left Brandy Hill's body there in the field, where it was discovered several days later.

Jurors convicted Charm of first-degree malice-aforethought murder, kidnapping and first-degree rape. They sentenced Charm to fifty-four and one hundred twenty years' imprisonment, respectively, on the kidnapping and rape convictions, which were enhanced in light of Charm's nine prior felony convictions. After finding the existence of the three charged aggravating factors--Charm had killed the victim to avoid arrest or prosecution for kidnapping

and raping her, the killing was especially heinous, atrocious or cruel, and Charm was a continuing threat to society--the jury sentenced Charm to death on the murder conviction.

The Oklahoma Court of Criminal Appeals affirmed Charm's convictions and sentences on direct appeal, and denied him post-conviction relief. *See Charm v. State*, 924 P.2d 754 (Okla. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Charm v. State*, 953 P.2d 47 (Okla. Crim. App. 1998).

## II. STANDARDS OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Charm will be entitled to federal habeas relief only if he can establish that the state courts' resolution of his claims was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent, or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We presume correct any state-court factual finding, absent clear and convincing evidence to the contrary. *See id.* § 2254(e)(1). If the state courts did not address the merits of a habeas claim, however, we will review the district court's decision *de novo*, and that court's factual findings for clear error. *See, e.g., Romano v. Gibson*, 278 F.3d 1145, 1150 (10th Cir. 2002).

### III. ISSUES

**A.** *Ineffective representation.* Charm contends his trial attorney was constitutionally ineffective when, during the trial's first-stage opening argument, counsel conceded Charm's guilt. In addition, Charm argues that his appellate attorney was ineffective for failing to challenge, on direct appeal, this deficient trial representation.

**1.** *Trial representation.*

**a.** *Procedural default.* The State initially asserts that Charm procedurally defaulted his ineffective-trial-counsel claim. Charm did not challenge trial counsel's first-stage representation on direct appeal. Therefore, when Charm first raised the issue, in his state post-conviction proceeding, the Oklahoma Court of Criminal Appeals held that, because Charm could have raised this issue on direct appeal but did not, he had procedurally defaulted this claim. *See Charm*, 953 P.2d at 49-50.

A federal court will not review a habeas claim that the petitioner has defaulted in state court, based upon an adequate state procedural bar independent of federal law, unless the petitioner can show cause and prejudice excusing his default, or that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 729-30, 750 (1991). Charm seems to argue, however, that the state bar at

issue here is not adequate because, under Oklahoma procedural rules, he could not have sufficiently developed the direct-appeal record to present this ineffective-trial-counsel claim. *Cf., e.g., Sallahdin v. Gibson*, 275 F.3d 1211, 1234-35 (10th Cir. 2002) (noting, in dicta, that Oklahoma's procedural bar, precluding post-conviction review of ineffective-trial-counsel claim not raised on direct appeal, was not adequate where claim could not have been resolved solely on trial record). Here, it does not appear that Oklahoma procedural bar is adequate because trial counsel's strategy was explored in post-trial proceedings. Because the state appellate court did not address this claim's merit, however, we review the district court's decision denying habeas relief *de novo*,[1] and any factual findings only for clear error. *See Romano* , 278 F.3d at 1150;   *see also Fisher v. Gibson*  , 282 F.3d 1283, 1290 (10th Cir. 2002) (discussing review standards applicable to this court's pre-AEDPA review of ineffective-assistance claim).

---

[1]     The district court ultimately concluded Charm had procedurally defaulted this ineffective-trial-counsel claim. Nonetheless, that court also addressed this claim's merit in considering Charm's argument that his appellate counsel was ineffective for failing to challenge, on direct appeal, trial counsel's representation.

### b.     Merits.

During his first-stage opening argument, defense counsel made the

following statements suggesting Charm's guilt:

> this is a case that is about a horrible human event.  There is no
> question about that, and that's what the evidence will show.  We're
> not disagreeing with the prosecutor in terms of what the evidence
> will show.  In fact, I'll tell you now that we will tell you before
> I conclude this opening statement that we believe after the prosecutor
> presents the evidence there will be a basis there for you to find
> Kenneth Charm guilty of first degree murder.  I will tell you that
> now.
>
> I also tell you there will be a basis there in the evidence to find
> him guilty of kidnapping and rape. . . .
>
> . . . .
>
> We will not present evidence that . . . makes Kenneth Charm
> not guilty . . . .
>
> . . . .
>
> . . . We believe that the evidence will show, again, at the
> close of the State's case as I told you when I started that there is
> a basis for you to find Mr. Charm guilty of these three offenses.
> And then we will ask you to spare his life.

Trial tr., vol. 3 at 652, 659, 661.  Charm asserts several challenges to this

argument.

### i.  Trial counsel abandoned his adversarial role, resulting in per se ineffective representation.  A criminal defendant is deprived

of his Sixth Amendment right to effective representation "if counsel entirely fails

to subject the prosecution's case to meaningful adversarial testing, . . . mak[ing] the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659 (1984). "[A]n attorney who adopts and acts upon a belief that his client should be convicted 'fail[s] to function in any meaningful sense as the Government's adversary.'" *Osborn v. Shillinger*, 861 F.2d 612, 625 (10th Cir. 1988) (quoting *Cronic*, 466 U.S. at 666).

> A defense attorney who abandons his duty of loyalty to his client and effectively joins the state in an effort to attain a conviction or death sentence suffers from an obvious conflict of interest, and thereby fails to provide effective assistance. Usually, when a defendant claims ineffective assistance of counsel because his attorney's performance was inadequate, he must show both constitutionally deficient performance and that he was prejudiced by his attorney's errors. In the event of an actual conflict of interest occasioned by abandonment, [however,] prejudice is presumed.

*Davis v. Executive Dir. of Dep't of Corr.*, 100 F.3d 750, 756-57 (10th Cir. 1996) (citations, further quotation omitted); *see also Osborn*, 861 F.2d at 626.

Here, defense counsel did not abandon his "'overarching duty to advocate the defendant's cause.'" *Osborn*, 861 F.2d at 628 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Rather, defense counsel was faced with overwhelming evidence establishing Charm's guilt, including foremost Charm's own videotaped confession describing in detail his participation in these horrific crimes. *See Hale v. Gibson*, 227 F.3d 1298, 1323 (10th Cir. 2000) (holding counsel did not abandon defendant when, during first-stage closing, counsel

-7-

stated there was no doubt defendant was involved in capital crime, in light of overwhelming evidence indicating so, but further arguing defendant might not have been only participant), *cert. denied*, 533 U.S. 957 (2001); *see also Davis*, 100 F.3d at 758-59. And defense counsel did pursue pretrial motions on Charm's behalf, cross-examined the State's witnesses, made evidentiary objections at trial and asserted in Charm's defense the minimal evidence available indicating that Charm might have been intoxicated at the time of the crimes. *See Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir. 1998) (holding counsel's performance did not so deny defendant representation such that prejudice should be presumed, where defense counsel did conduct limited cross-examination, made evidentiary objections and gave closing argument). To be entitled to relief under *Cronic*, "the attorney's failure must[, instead,] be complete." *Bell v. Cone*, 122 S. Ct. 1843, 1851 (2002).

Trial counsel's apparent strategy was to maintain credibility with the jury during the first stage so that he could strongly pursue a sentence less than death during the penalty phase. *See* Trial tr., vol. 5 at 1470 (defense counsel's second-stage closing argument). And counsel did fully assert a case in mitigation during the trial's capital-sentencing stage. Defense counsel, thus, did not act "with reckless disregard for his client's best interests," nor did he intentionally "weaken his client's case." *Osborn*, 861 F.2d at 629. After examining the entire

record, *see Houchin v. Zavaras*, 107 F.3d 1465, 1471 (10th Cir. 1997), therefore, we cannot conclude that defense counsel abandoned Charm, "such that the adversarial process was undermined," *Davis*, 100 F.3d at 758.

### ii. Trial counsel was ineffective in pleading Charm guilty without his consent.

Charm further argues that defense counsel was constitutionally ineffective for essentially pleading Charm guilty without his consent.[2]  Following an evidentiary hearing, however, the federal district court found that Charm had, in fact, consented to trial counsel's strategy of conceding, at the beginning of trial, that the State would present sufficient evidence for jurors to convict Charm.  *See* District ct. mem. op. at 16-17.  In doing so, the district court relied on defense counsel's testimony, finding Charm's contrary testimony not credible.  *See id.*  These factual findings were not clearly erroneous. *See, e.g., Bryan v. Gibson*, 276 F.3d 1163, 1174, 1175 (10th Cir. 2001).

Furthermore, the pretrial proceedings in this case bolster the district court's factual finding that Charm consented to trial counsel's strategy.  *Cf. LoBosco v. Thomas*, 928 F.2d 1054, 1057 (11th Cir. 1991) (discussing facts that buttressed,

---

[2]     Clearly established Supreme Court authority does require the trial court, when a defendant enters a guilty plea, to determine whether the defendant is doing so knowingly and voluntarily.  *See, e.g., Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969).  Nonetheless, Charm does not specifically argue to this court that the trial court was required to do so under the circumstances here.  Nor did Charm assert such a claim in state court.  Charm, instead, confines his argument here to challenging only trial counsel's representation.

but were not necessary to, district court's finding that petitioner had consented to defense counsel's conceding petitioner's guilt).  Following his arrest, Charm confessed.  *See id.*  And, during a pretrial motions hearing, Charm sought the court's permission not to attend trial, stating "[t]here is no doubt in my mind on my guilt or innocence, and I didn't come up here to . . . plea[d] or nothing.  But . . . I wish not to be present. . . . [W]ithin my heart and within the Lord's heart I feel that I am guilty of all but . . .."  Sept. 15, 1994 motions hr'g tr. at 19-20.

> . . . I feel that I am guilty of all charges but one.[3]  But . . . I wish not to be present in the court.  I will stand up on top of this building and tell the jury when we pick[] the jury the same thing before the trial ever gets picked.  You can chain me to a chair, put duct tape to my mouth but I want them to know this before any of that court procedure goes on.  I have asked my attorney to come to the D.A. to inform him of . . . my guilt of two charges.

*Id.* at 20.  When the trial court offered to let Charm plead guilty to two of the three charges, however, Charm declined.  *See id.*

Again, immediately prior to jury selection, Charm told the trial judge that "I admitted to my guilt of the crime just like I will . . . in front of the jury.  I admitted my guilt so I don't see no--for--for, uh, this madness."  Trial tr., vol. 1

---

[3]      During his second-stage testimony, Charm asserted that he was guilty of murder and he did not understand the legal requirements for kidnapping. *See* Trial tr., vol. 5 at 1397.  It appears, then, that he believed he was not guilty of rape.

at 18.  Again, the trial court offered to let Charm plead guilty, to which Charm did not respond.  *See id.* at 19-20.

Furthermore, at the federal evidentiary hearing, Charm's defense attorney testified that Charm had confessed to counsel his participation in these crimes and asserted to defense counsel that "he did not want to fight the case."  Nov. 2, 1999 hr'g tr. at 42.

The district court's factual finding, therefore, that Charm had consented to defense counsel's strategy was not clearly erroneous and now precludes habeas relief on this ineffective-trial-counsel claim.  *Cf. United States v. Jones*, 287 F.3d 325, 330-31 (5th Cir. 2002) (denying relief on similar claim in part because defendant had consented to defense counsel's trial strategy); *LoBosco*, 928 F.2d at 1057 (denying habeas relief where record established that defendant knew and agreed with trial counsel's strategy to admit guilt and then try to avoid death sentence).

### iii.  Trial counsel's unreasonable first-stage strategy prejudiced Charm's defense.

Charm also argues that his trial attorney's first-stage representation was constitutionally ineffective under *Strickland*. *Strickland* requires that Charm establish both that trial counsel's performance was deficient and that any deficiency prejudiced Charm's defense.  *See* 466 U.S. at 687.

For deficient performance, Charm must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is, then, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Charm, therefore, "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (further quotation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

In this case, defense counsel's strategy was to acknowledge, at the beginning of trial, that the State would present sufficient evidence for the jury to convict Charm, in order to maintain credibility with the jury for the second stage, where defense counsel hoped to save Charm's life. The question presented here, then, is whether this strategy was reasonable. *See, e.g., Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). "For counsel's actions to rise to the level of constitutional ineffectiveness, [this] strategic decision[] must have been

completely unreasonable, not merely wrong, so that [it] bear[s] no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (further quotations omitted). Under the circumstances of this case, defense counsel's strategy was reasonable. *See, e.g., Hale*, 227 F.3d at 1323 (holding counsel's conceding petitioner had some involvement in kidnapping and murder was reasonable strategy in light of overwhelming evidence against petitioner, where defense counsel further argued that others may also have been involved); *Trice v. Ward*, 196 F.3d 1151, 1161-62 (10th Cir. 1999) (holding defense counsel's strategy of admitting defendant raped victim and, instead arguing defendant did not have specific intent to commit first-degree murder, was reasonable, in light of defendant's confession to rape, which was corroborated by physical evidence).

The State's evidence overwhelmingly established Charm's guilt. Most damning was Charm's own videotaped confession, which defense counsel had tried unsuccessfully to suppress. Moreover, in his opening argument, defense counsel did not specifically assert that Charm was guilty, but only that the State would present evidence upon which the jury could convict him.

Additionally, by not letting Charm plead guilty, defense counsel insured that a jury, rather than the trial judge, would make the capital sentencing decision. *See* Okla. Stat. Ann. tit. 21, § 701.10. Trial counsel believed that, under the

circumstances, if Charm had, instead, pled guilty, the trial judge would certainly have imposed a death sentence. *See* Nov. 2, 1999 hr'g tr. at 39-40. Charm does not assert any reason to think this belief was unreasonable.

Even if we could deem this strategy unreasonable, defense counsel's concession did not prejudice Charm's defense. To establish prejudice, Charm must show that, in light of the totality of the evidence, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. We cannot reach that conclusion here. The State's evidence establishing Charm's guilt was overwhelming. Charm confessed, on videotape and in great detail, to committing these crimes. And the State's other evidence directly corroborated many of the details of Charm's confession. Further, any evidence indicating Charm was intoxicated at the time he kidnapped, raped, and murdered the victim was very minimal. Even if defense counsel had not begun the trial by acknowledging that the State's evidence would be sufficient for jurors to convict Charm, there is no reasonable probability jurors would have had a reasonable doubt as to his guilt. *See, e.g., Hale*, 227 F.3d at 1322-23; *Cooks*, 165 F.3d at 1293; *cf. Anderson v. Calderon*, 232 F.3d 1053, 1090 (9th Cir. 2000), *cert. denied*, 122 S. Ct. 580 (2001), *abrogation on other grounds recognized*, *Osband v. Woodford*, No. 00-99016, 2002 WL 987535, at *7 (9th Cir. May 15, 2002); *Clozza v.*

-14-

*Murray*, 913 F.2d 1092, 1098, 1100-01 (4th Cir. 1990); *Messer v. Kemp*, 760 F.2d 1080, 1090-91 (11th Cir. 1985).

> *2.* ***Appellate representation.*** Charm further asserts that his appellate counsel was ineffective for failing to challenge, on direct appeal, trial counsel's first-stage opening argument conceding Charm's guilt. Direct-appeal counsel will be constitutionally ineffective if she was objectively unreasonable in failing to raise the ineffective-trial-representation claim and if there is a "reasonable probability that, but for counsel's unreasonable failure" to raise this claim, Charm "would have prevailed on his [direct] appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying *Strickland*). The Oklahoma Court of Criminal Appeals did address this claim's merit, denying relief. *See Charm*, 953 P.2d at 49-50. In doing so, however, the state appellate court did not apply this legal standard. *See id.* We, therefore, review this claim *de novo*, applying *Strickland*. *See Romano*, 278 F.3d at 1150. *See generally Revilla v. Gibson*, 283 F.3d 1203, 1220 n.14 (10th Cir. 2002) (reviewing ineffective-assistance claim *de novo* where state appellate court applied incorrect legal standard).

"In order to properly address th[is] issue[], we must look to the merits of the omitted issue." *Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002) (further quotation omitted). In light of the preceding discussion concluding Charm's underlying ineffective-trial-counsel claim lacks merit, however, there is no

-15-

reasonable probability that, had appellate counsel raised this claim, Charm would have prevailed on direct appeal.

**B.    *Lesser-included-offense instruction.*** *Beck v. Alabama*, 447 U.S. 625 (1980), provides that a death sentence may not "constitutionally be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." *Id.* at 627 (further quotation omitted). Charm contends that, in his case, the trial court violated *Beck* and, thus, deprived him of due process, by failing to instruct the jury on the lesser-included offense of first-degree manslaughter. Applying *Beck,* the Oklahoma Court of Criminal Appeals held that there was insufficient evidence to warrant instructing the jury on first-degree manslaughter. *See Charm*, 924 P.2d at 759-60. That decision was reasonable.[4]  *See* 28 U.S.C. § 2254(d).

---

[4]      Charm never requested that the trial court instruct the jury on first-degree manslaughter. Rather, at trial, he unsuccessfully sought instructions on second-degree-depraved-mind murder and first-degree felony murder. This court has held that a petitioner will not be entitled to habeas relief under *Beck* if he did not request the specific lesser-included-offense instruction at trial. *See Hooks v. Ward*, 184 F.3d 1206, 1234-35 (10th Cir. 1999). In *Hooks*, however, this court was reviewing that *Beck* claim *de novo*. *See id.* at 1223. Here, on the other hand, the Oklahoma Court of Criminal Appeals did address, in the first instance, whether there was sufficient evidence to support giving the unrequested first-degree-manslaughter instruction. Because our focus, under AEDPA, is the reasonableness of the state court's decision, *see Valdez v. Ward*, 219 F.3d 1222, 1242-43 (10th Cir. 2000), *cert. denied*, 532 U.S. 979 (2001), here we

(continued...)

-16-

The relevant inquiry here is "whether the evidence presented at trial would permit a rational jury to find [Charm] guilty" of first-degree manslaughter "and acquit him of first-degree murder." *Mitchell v. Gibson*, 262 F.3d 1036, 1050 (10th Cir. 2001) (further quotation omitted).[5]  Oklahoma law, in relevant part, defines first-degree manslaughter as a homicide "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide."  Okla. Stat. tit. 21, § 711(2).  "The elements of heat of passion are 1) adequate provocation; 2) a passion or emotion such as fear, terror, anger, rage or resentment; 3) [the] homicide occurred while the passion still existed and before a reasonable opportunity for the passion to cool; and 4) a causal connection between the provocation, passion and homicide."  *Hogan*, 197 F.3d at 1308 (further quotation omitted) (citing Oklahoma cases).  On the other hand, under applicable Oklahoma law, "[a] person commits murder in the first degree when that person unlawfully and with malice

---

[4](...continued)
will also consider whether the evidence supported a first-degree-manslaughter instruction.

[5]     This court has not yet decided whether this inquiry presents a legal issue, reviewed under 28 U.S.C. § 2254(d)(1), or a factual question reviewed instead under 28 U.S.C. § 2254(d)(2) and (e)(1).      *See, e.g., Hogan v. Gibson*, 197 F.3d 1297, 1306 (10th Cir. 1999).  We need not resolve that issue here, either, because Charm would not be entitled to habeas relief under either standard.      *See, e.g., Valdez*, 219 F.3d at 1242.

aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." Okla. Stat. tit. 21, § 701.7(A) (Supp. 2002).

The record here is simply devoid of any evidence indicating any adequate provocation specifically, or heat of passion generally, producing Brandy Hill's death. The evidence, therefore, did not warrant a first-degree-manslaughter instruction. The state appellate court, thus, reasonably denied Charm relief on this *Beck* claim. *See* 28 U.S.C. § 2254(d).

### C.     *Was there sufficient evidence to support the aggravating factors?*

Charm argues there was insufficient evidence to support the jury's finding the existence of the three charged aggravating factors. In this habeas proceeding, the relevant question presented is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the [presence of the aggravating factor] beyond a reasonable doubt." *Fields v. Gibson*, 277 F.3d 1203, 1220 (10th Cir. 2002) (applying *Jackson v. Virginia*, 443 U.S. 307 (1979)) (further quotation omitted); *see also Lewis v. Jeffers*, 497 U.S. 764, 780-83 (1990). The Oklahoma Court of Criminal Appeals, however, in addressing these claims, applied a different legal standard, considering instead only whether there was "competent" evidence to support

-18-

the aggravators. *Charm*, 924 P.2d at 770. We will, therefore, review these claims *de novo*, applying *Jackson*. *See Romano,* 278 F.3d at 1150; *see also Fields,* 277 F.3d at 1220 (noting that, prior to AEDPA, this court reviewed similar claim *de novo*).

*1. Continuing threat.* Under Oklahoma law, the continuing-threat aggravator may be established solely on the basis of the callous nature of the crime itself. *See, e.g., Sallahdin*, 275 F.3d at 1232. Here, then, the facts of the kidnapping, rape and murder alone are sufficient to support this aggravating factor. *See, e.g., James v. Gibson*, 211 F.3d 543, 559 (10th Cir. 2000). In addition, however, the defense's own psychologist testified that Charm was a continuing threat to society. *See* Trial tr., vol. 5 at 1311. The State's psychologist, too, asserted that Charm's personal insecurity made it possible that he would become aggressive or assaultive. And while his nine prior felonies had generally been nonviolent, Charm had received prison disciplinary reports for fighting, threatening to kill another inmate and possessing a homemade weapon. *See, e.g., James*, 211 F.3d at 559 (determining evidence was sufficient to support jury's finding this aggravator, relying in part on threats defendant made while in custody and his possession of homemade weapons while in prison). In addition, during his confession, Charm threatened to kill his wife. And he had previously threatened to kill a former work supervisor. Furthermore, a few days after this

kidnapping, rape and murder, Charm robbed a convenience store by pretending to have a weapon and threatening to kill the clerk. The record, therefore, was sufficient for a rational jury to find beyond a reasonable doubt that Charm was a continuing threat to society.

    *2.*     ***Avoid arrest or prosecution.***   The jury found that Charm killed the victim to avoid arrest or prosecution. "Under Oklahoma law," the avoid-arrest aggravating factor "focuses on the defendant's intent, which can be proven either through his own statements or circumstantial evidence, and additionally requires proof of a predicate crime, other than the murder, for which the defendant seeks to avoid arrest or prosecution." *Romano*, 278 F.3d at 1154.

Here, the kidnapping and rape supply the necessary predicate crimes. Further, the victim knew both her attackers. *See, e.g., Romano v. Gibson*, 239 F.3d 1156, 1179 (10th Cir.) (determining evidence was sufficient for jury to find this aggravator, where defendant told acquaintance he would have to kill victim after robbing him, because victim knew and could identify petitioner), *cert. denied*, 122 S. Ct. 624, 628 (2001). Additionally, according to Charm's own confession, after the rapes, Jessie had asked Charm what they were going to do with the victim. It was only then that Jessie began choking her. Because Jessie was unable to kill her, however, Charm then tried to choke her to death. According to Charm, "she wouldn't die." Trial tr., vol. 3 at 847. Finally, after

stating that somebody was going to come, Jessie retrieved the sledgehammer from the car's trunk and hit the victim in the head several times with it. After noting that "she was still moving," Charm remarked, "'[m]an, we're going to go to jail,'" and then he hit her, too, to "make sure she was dead." *Id.* at 847, 863-64. *See LaFevers v. Gibson*, 182 F.3d 705, 723 (10th Cir. 1999) (determining evidence was sufficient for jury to find this aggravating factor under similar circumstances). The two men then hid the victim's body and returned to Michael Hill's home to establish an alibi. This evidence was more than sufficient for a rational trier of fact to find this aggravating factor beyond a reasonable doubt.

     *3.    **Especially heinous, atrocious or cruel.*** "A murder is especially heinous, atrocious or cruel under Oklahoma law if it is preceded by torture or serious physical abuse. Torture includes the infliction of either great physical anguish or extreme mental cruelty, while physical abuse requires evidence of conscious physical suffering." *Toles v. Gibson*, 269 F.3d 1167, 1183 (10th Cir. 2001) (further quotation omitted). Here, again, the evidence was sufficient for the jury to find this aggravating factor beyond a reasonable doubt. Charm and Jessie abducted the victim, wrapping a piece of cloth around her neck. According to Charm's own confession, the victim kept pleading with them, asking them over and over again to please take her home and not hurt her. *See Jones v. Gibson*, 206 F.3d 946, 953 (10th Cir. 2000) (noting that under Oklahoma law,

victim's uncertainty as to her fate will suffice to establish mental anguish or torture). In addition, according to the medical examiner, the victim sustained physical injuries during the kidnapping and rapes, including scratches or a bruise over her right eye and on her right cheek, neck, abdomen and chest, and her left wrist, front and back, as well as her left elbow and arm. *See Moore v. Gibson*, 195 F.3d 1152, 1177 (10th Cir. 1999) (determining evidence was sufficient to support jury's finding that murder was especially heinous, atrocious or cruel under similar circumstances). The injuries to her left wrist were consistent with defensive wounds. *See Fox*, 200 F.3d at 1299 (determining evidence was sufficient to support this aggravating factor where, among other things, victim suffered defensive wounds). Additionally, trauma to her vaginal area corroborated the confessed rapes. Charm also confessed that the victim continued pleading during the rapes, asking that they not hurt her. *See id.* (testimony that victim cried out and begged for his life during attack supports finding victim endured conscious physical suffering). After the rapes, both Charm and Jessie each attempted, unsuccessfully, to strangle the victim. Finally, they each hit her several times over the head with a sledgehammer. While it is unclear when, between the strangulation and the bludgeoning, the victim finally lost consciousness, the preceding events were more than sufficient to establish both

torture and conscious physical suffering during the attack. *See, e.g., Hooks*, 184 F.3d at 1240.

## IV.   *CONCLUSION*

For these reasons, we AFFIRM the denial of habeas relief.

Entered for the Court

Deanell Reece Tacha
Chief Judge